# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES TRUSTEE, | ) | CASE NO. 5:16-cv-2515 |
| | ) | |
| APPELLANT, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| STE-BRI ENTERPRISES, INC., | ) | |
| | ) | |
| APPELLEE. | ) | |

Appellant United States Trustee ("appellant" or "UST") appeals the September 30, 2016 decision and order entered by the United States Bankruptcy Court, Northern District of Ohio, Case No. 11-53273, finding that appellant's pre-conversion Chapter 11 quarterly fees are subordinated to Chapter 7 administrative expenses and paid pro rata with Chapter 11 administrative expenses. (Doc. No. 1-1 (Order Denying Approval of Chapter 7 Trustee's Final Report ["Bankr. Order"]); Doc. No. 1-2 (Bankruptcy Memorandum Decision, dated Sept. 30, 2016 ["Bankr. MD"]).) The Chapter 7 Trustee and appellee each filed a notice of non-participation indicating that they did not intend to file a response brief or otherwise actively participate in the appeal. (Doc. No. 4 (Chapter 7 Trustee Notice); Doc. No. 5 (Debtor Notice).)

For the reasons that follow, the bankruptcy court's order is reversed, and the matter is remanded to the bankruptcy court for further proceedings.

## I. BACKGROUND

Appellee Ste-Bri Enterprises, Inc. ("debtor" or "Ste-Bri") filed a voluntary bankruptcy

petition under Chapter 11 on August 25, 2011. (Doc. No. 9-1 (Appendix ["App."]), beginning at 160.[1]) During the course of those proceedings, the debtor incurred an obligation to pay quarterly fees to the UST pursuant to 28 U.S.C. § 1930(a)(6). As the debtor's efforts to reorganize the business under Chapter 11 were unsuccessful, Ste-Bri converted its case to Chapter 7 on March 3, 2014. (*Id*. (Order to Convert) at 163.) Thereafter, Dynele L. Schinker-Kuharich ("Chapter 7 Trustee") was appointed Chapter 7 trustee.

On October 23, 2015, the Chapter 7 Trustee filed her final report. (*Id.* (Final Report), beginning at 168.) The Final Report identified outstanding fees and administrative expenses as follows: statutory compensation due the Chapter 7 Trustee of $2,628.44; expenses of $248.45, and $9,745.73 as the remaining UST's quarterly fees due from the last quarter that Ste-Bri was in Chapter 11; and $2,300.00 in expenses for accounting services performed while the case was in Chapter 11. (*Id.* at 181-82.) The total amount of all priority claims was $14,922.62, which was more than double the balance of liquidated funds available from the estate.

Because there were insufficient funds to pay all administrative expenses and the UST's quarterly fees in full, the Chapter 7 Trustee proposed to pay her administrative expenses pro rata with the UST's quarterly fees. No party in interest objected to the distribution proposed in this final report. On February 3, 2016, the bankruptcy trial court held a hearing on the proposed distribution where it raised *sua sponte* the question of whether the Chapter 7 Trustee's

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

administrative expenses should be senior to both the UST's quarterly fees and the accountant's fees because the latter two obligations arose before conversion. (App. (Transcript) at 237-38.) Both the Chapter 7 Trustee and the UST were invited to submit post-hearing briefs on the issue. The Chapter 7 Trustee filed no response, but the UST submitted a brief wherein it argued that its pre-conversion quarterly fees should receive parity with the Chapter 7 administrative expenses and enjoy priority over the Chapter 11 administrative expenses. (*Id.* (Comment of the UST to Trustee's Final Report) at 192-93.)

In its September 30, 2016 decision denying the final report, the bankruptcy court instructed the Chapter 7 Trustee to revise her final report by according senior priority to her own fees and expenses. (Bankr. MD at 19.) It further instructed the Chapter 7 Trustee to treat the UST's quarterly fees and the Chapter 11 administrative expenses as equal in priority to each other but junior to the Chapter 7 expenses. (*Id.*) The UST filed a timely notice of appeal from the bankruptcy court's memorandum decision and order. (Doc. No. 1.)

This Court has jurisdiction to hear the appeal under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. The bankruptcy court's order denying the final report is a final, appealable order because it finally disposed of the discrete issue of the relative priority given to the UST's statutory fees and the Chapter 7 Trustee's administrative expenses, and fixed the parties' rights in the distribution of the estate's assets. *See In re Blasingame*, 651 F. App'x 386, 388 (6th Cir. 2016) (noting litigants may appeal bankruptcy orders "where the orders finally dispose of discrete disputes within the larger case" and where the order "alter[s] the status quo" or "fix[es] the rights and obligations of the parties") (citing *Bullard v. Blue Hills Bank*, --U.S.--, 135 S. Ct.

1686, 1692, 191 L. Ed. 2d 621 (2015) (quotation marks and further citation omitted).

## II. ISSUE ON APPEAL

Whether the UST's statutory fees—commonly referred to as quarterly fees because they are due quarterly—that are incurred prior to the conversion from Chapter 11 to Chapter 7 have the same priority as a bankruptcy case's allowed Chapter 7 administrative expenses.

## III. STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *AMC Mortg. Co., Inc. v. Tenn. Dep't of Revenue* (*In re AMC Mortg., Co.*), 213 F.3d 917, 920 (6th Cir. 2000) (citation omitted); *see Harbour Lights Marina, Inc. v. Wandstrat* (*In re Harbour Lights Marina, Inc.*), 153 B.R. 781, 782 (S.D. Ohio 1993) ("When reviewing a bankruptcy court's decision, a district court functions as an appellate court, and applies the standard of review generally applied in the federal courts of appeal.") (citations omitted). "A matter requiring statutory interpretation is a question of law requiring de novo review[.]" *United States v. Shafer*, 573 F.3d 267, 272 (6th Cir. 2009) (quoting *United States v. Dedman*, 527 F.3d 577, 584-85 (6th Cir. 2008) (further citation omitted)); *see also United States v. Alkhabaz*, 104 F.3d 1492, 1494 (6th Cir. 1997) ("Because Congress's intent is essentially a question of statutory interpretation, we review the district court's decision *de novo*.") (citations omitted), *abrogated, in part, on other grounds by Elonis v. United States*, --U.S.--. 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015).

"'The task of resolving [a] dispute over the meaning of [the Bankruptcy Code] begins where all such inquiries must begin: with the language of the statute itself.'" *Mediofactoring v. McDermott* (*In re Connolly N. Am., LLC*), 802 F.3d 810, 815 (6th Cir. 2015) (quoting *United*

*States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989)); *see Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) ("In all cases of statutory construction, the starting point is the language employed by Congress.") (citation omitted). "If the language is clear, [the court] need not look further because Congress 'says in a statute what it means and means in a statute what [it] says.'" *In re Connolly N. Am.*, 802 F.3d at 815 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Banks, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) (quotation marks and further citation omitted)); *see Ron Pair Enters.*, 489 U.S. at 241 (Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (quotation marks and citation omitted).

"The court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir. 1988) (citation omitted). Accordingly, "[w]hen . . . a statutory term is ambiguous, 'it is [the duty of the court] to examine the legislative history in order to render an interpretation that gives effect to Congress's intent.'" *Robiner v. Danny's Mkts., Inc.*, (*In re Danny's Mkts., Inc.*), 266 F.3d 523, 525 (6th Cir. 2001) (quoting *United States v. Markwood*, 48 F.3d 969, 975 n.7 (6th Cir. 1995)).

## IV. DISCUSSION

The present appeal requires the Court to interpret and consider the interplay between three statutory provisions. First, the UST's quarterly fees are set forth in 28 U.S.C. § 1930. The United States Trustee Program, first established as a pilot program in 1978, was expanded in 1986 when Congress increased the bankruptcy filing fees and adopted subsection (a)(6) in the

5

statutory bankruptcy provision to require the payment of the United States Trustee's quarterly fees by Chapter 11 debtors. H.R. Rep. No. 99-764, at 22, 25; *see* 28 U.S.C. § 1930(a)(6). As amended, § 1930(a)(6) provides, in relevant part, that "a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first." Given the nature in which these fees are to be paid, § 1930(a)(6) fees are commonly referred to as "quarterly fees."

Next, § 507 of the Bankruptcy Code sets forth the order of priority for payment of claims and fees in bankruptcy proceedings under Chapters 7, 11, 12, and 13. *See* 11 U.S.C. § 507(a). Section 507 affords priority to "administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343), *and any fees and charges assessed against the estate under Chapter 123 of Title 28*."[2] 11 U.S.C. § 507(a)(2) (emphasis added).

Finally, § 726 of the Bankruptcy Code provides for the distribution of property under Chapter 7 when there are insufficient funds to pay all claims in full. *See* 11 U.S.C. § 726. Section 726(b) directs the bankruptcy court to divide the assets pro rata among all the claims in the class that cannot be fully satisfied:

> Payment on claims of a kind specified in [each paragraph] of section 507(a) . . . shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under

---

[2] Under § 507, first priority is given to "unsecured claims for domestic support obligations that . . . are owed to or recoverable by a spouse, former spouse, or a child of the debtor[.]" § 507(a)(1)(A). As a corporation, the debtor has no domestic support obligations, and, for this case, § 507(a)(2) becomes the "first priority" under the statutory provision.

> section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726(b).

As set forth above, the exception in § 726(b) only comes into play when there are both insufficient funds to satisfy all fees and expenses and when there has been a conversion to Chapter 7 proceedings from another chapter. Narrow as these circumstances may be, they have occurred often enough to spawn two lines of cases. The minority view, embraced by two bankruptcy courts,[3] essentially equates the UST's quarterly fees with administrative expenses, given the equal priority treatment under § 507(a). *See Reitmeyer v. Wetmore* (*In re Wetmore*), 117 B.R. 201, 201 (W.D. Pa. 1990) ("Administrative expenses include those allowed under § 503(b) and fees and charges assessed against the estate under Chapter 123 of Title 28.") Recognizing that § 726(b) elevates post-conversion administrative expenses above pre-conversion ones, the minority view treats all Chapter 11 fees and expenses equally and subordinates them all to Chapter 7 administrative expenses. *Id*. at 202. According to the minority, such a result is necessary in order to provide incentive for the parties who must act in Chapter 7 to wind up a debtor's affairs. *Id*. at 202; *In re Ehrman*, 171 B.R. 683, 685 (Bankr. D. Ariz. 1994), *rev'd by* 184 B.R. 362 (D. Ariz. 1995).

Most courts, including the only two circuit courts to address the issue, have reached a contrary result, concluding that the UST's quarterly fees are to be paid pro rata with Chapter 7

---

[3] *In re Discount Printing, Inc*., 199 B.R. 145 (Bankr. S.D. W. Va. 1995); *Reitmeyer v. Wetmore* (*In re Wetmore*), 117 B.R. 201 (Bankr. W.D. Pa. 1990). A third bankruptcy decision adopting the minority view, *In re Ehrman*, 171 B.R. 683 (Bankr. D. Ariz. 1994), was reversed by the district court, 184 B.R. 362 (D. Ariz. 1995).

administrative expenses and ahead of Chapter 11 administrative expenses. *United States Trustee v. Endy* (*In re Endy*), 104 F.3d 1154, 1156-58 (9th Cir. 1997) (collecting cases); *Huisinga v. Carter* (*In re Juhl Enters., Inc.*), 921 F.2d 800, 803-04 (8th Cir. 1990); *In re Jonick Deli Corp.*, 263 B.R. 196, 199 (S.D.N.Y. 2001); *In re Mary James, Inc.*, 225 B.R. 635, 640 (E.D. Mich. 1998) (citation omitted); *Ross v. Kanaga* (*In re Darmstadt Corp.*), 164 B.R. 465, 471 (D. Del. 1994); *In re Bancroft Laundry Ctr., Inc.*, 164 B.R. 586, 587-88 (Bankr. N.D. Ohio 1994). Courts in the majority begin with the language of § 507(a), finding that "[t]he grammatical structure of § 507(a)—specifically, the comma between the phrases 'administrative expenses allowed under section 503(b)' and 'any fees and charges,' combined with the conjunction 'and'—clearly distinguishes the two kinds of claims." *In re Jonick Deli*, 263 B.R. at 198-99 ("Quarterly fees are not administrative expenses[.]") (citing *In re Ehrman*, 184 B.R. at 364) (further citation omitted); *see In re Darmstadt*, 164 B.R. at 470 (citing *Ron Pair Enters*, 489 U.S. at 241); *In re Bancroft Laundry Ctr.*, 164 B.R. at 587 ("Section 507(a)(1) of the Bankruptcy Code makes a distinction between administrative fees under Section 503(b) and the fees charged against the estate under Chapter 123."); *see also In re Atcall, Inc.*, 284 B.R. 791, 796 (Bankr. E.D. Va. 2002) (noting that "[a]dministrative expenses are expenditures that allow a chapter 11 debtor to operate . . . or a chapter 7 trustee to liquidate a bankruptcy estate. Fees and costs are different. They are statutorily impos[ed] fees for certain court services").

Given the distinction between quarterly fees and administrative expenses, and in light of the fact that § 726(b) only discusses the priority given to Chapter 7 administrative expenses relative to administrative expenses incurred under Chapter 11, these courts have concluded that Congress did not intend to disturb the first priority given to the UST's quarterly fees.

Specifically, the Ninth Circuit reasoned:

> We know that Congress intended the fees dedicated to funding the U.S. Trustees program to be the highest priority claims in a liquidation, for it placed them in the first paragraph of 11 U.S.C. § 507(a), and thereby made them first payable under section 726(a). We also know that Congress intended to give Chapter 11 administrative expenses a lower priority than the other first priority claims under sections 507(a) and 726(a), because Congress said so when it enacted section 726(b). We conclude that Congress intended the U.S. Trustee's fees under Chapter 123 to have a priority equal to that of the Chapter 7 expenses, and superior to that of the Chapter 11 expenses.

*In re Endy*, 104 F.3d at 1157.

According to the majority view, such a result is consistent with the fact that, in creating the United States Trustee Program, Congress intended that the program "be self-funded." *In re Metro Transp. & Health Referral, Inc.*, 165 B.R. 832, 833-34 (Bankr. N.D. Ohio 1994) (citing H.R. 5316)); *see also In re Jonick Deli*, 263 B.R. at 200 ("subordinating quarterly fees to Chapter 7 administrative expenses does not further Congress's intent for the U.S. Trustee program to be 'self funded, . . . paid for by the users of the bankruptcy system[]'") (quoting *In re Ehrman*, 184 B.R. at 365). Given the legislative history of the United States Trustee Program, including the establishment of a special fund to finance the program through quarterly and filing fees, the majority found that "it can be better understood why the Congress chose under § 726(b) to subordinate only the § 503(b) expenses from a converted Chapter 11 case and the UST's Chapter 11 fees[.]" *In re Metro Transp.*, 165 B.R. at 834.

In the present case, the bankruptcy court agreed with the majority's treatment of administrative expenses and the UST's quarterly fees as separate and distinct. *In re Ste-Bri Enters., Inc.*, No. 11-53273, 2016 WL 5763796, at *6 (Bankr. N.D. Sept. 30, Ohio 2016) (noting that the court in *Juhl Enters*. "correctly" found that "the bankruptcy fees are not chapter 11

9

administrative expenses"). However, the bankruptcy court parted company with the majority after this point, insisting that the courts in the majority have incorrectly concluded that § 726(b) *subordinates* Chapter 11 administrative expenses to Chapter 7 administrative expenses. *Id*. The bankruptcy court noted that "[s]ection 726(b) does not purport to subordinate any claim, either with the word 'subordinate' or any other similar word or phrase. Instead, the statute provides that when a case is converted to chapter 7, a chapter 7 administrative expense claim 'has priority over a claim allowed under section 503(b) of this title. . . .'" *Id*. (quoting 11 U.S.C. § 726(b)). The bankruptcy court opined that § 726(b) elevated Chapter 7 administrative expenses while leaving static and unchanged the priority given to Chapter 11 administrative expenses and the UST's quarterly fees. Accordingly, the bankruptcy court concluded that Congress afforded Chapter 7 administrative expenses a "*superpriority*" over both Chapter 11 administrative expenses and the UST's quarterly fees.[4] *Id*. (citing 4 Collier's on Bankruptcy ¶ 507.17, at 507-91 (2016) (emphasis in original)).

In reaching this conclusion, the bankruptcy court took the courts in the majority to task for relying, in part, on Congress's intended policy that the United States Trustee Program be self-funded. *Id*. at *7 (citing *In re Endy*, 104 F.3d at 1157; *In re Jonick Deli*, 263 B.R. at 199; *In re Metro Transp.*, 165 B.R. at 833-34). The bankruptcy court "reject[ed] this policy argument[,]" reasoning that "the priority of bankruptcy claims are established by Sections 507 and 726 of the Bankruptcy Code[,]" and could not be found in policy considerations. *Id*. The bankruptcy court found persuasive the fact that the "United States Trustee Program was created by the same 1986

---

[4] In reaching this conclusion, the bankruptcy court relied on the dissent in *Juhl Enters.*, "where Senior Judge Heaney observes that 'in my view, Sec. 762(b) simply gives a superpriority to administrative expenses that arise after a conversion to chapter 7.'" *Id*. at *7 (quoting *In re Juhl Enters.*, 921 F.2d at 803-04 (Heaney, J., dissenting) (further citation omitted)).

amendments to the Bankruptcy Code that failed to grant such a superpriority to bankruptcy fees in Section 726(b)." *Id*.

While the bankruptcy court's thoughtful decision has some initial appeal, the Court believes that the decision goes too far and proves too much. The plain language of § 726(b) is limited to the relative positions of Chapter 7 and Chapter 11 administrative expenses. Section 726(b) speaks only of "a claim allowed under section 503(b)[.]" Administrative expenses are "allowed" under the Code. In contrast, fees and charges are "assessed." *See In re Atcall*, 284 B.R. at 796 (noting the difference between allowed claims and assessed fees). Further, though administrative expenses are established under § 503(b)—the statutory provision specifically referenced in § 726(b)—quarterly fees are set forth in an entirely different statute. *See In re N. Hess' Sons, Inc.*, 218 B.R. 354, 357 (Bank. D. Md. 1998) ("The fees owing to the U.S. Trustee do not arise under title 11 of the United States Code (the Bankruptcy Code), but rather under title 28.") (citing 28 U.S.C. § 1930(a)(6)). Congress recognized this difference, as it specifically separated 11 U.S.C. § 503(b) administrative expenses from the UST's quarterly fees in § 507(a), and had it wanted to include 28 U.S.C. § 1930(a)(6) quarterly fees in the priority discussion in 11 U.S.C. § 726, it knew how to do so.

Though characterizing the omission as "regrettab[le]" the bankruptcy court interprets Congress' silence on the relative status of Chapter 7 administrative expenses to the UST's quarterly fees as an indication that Congress intended to create a superpriority for Chapter 7 administrative expenses alone. Such a construction violates the rules governing statutory interpretation. Recently, the Supreme Court issued a warning against utilizing congressional silence to disturb bankruptcy priority. In *Czyzewski v. Jevic Holding Corp.*, --U.S.--, 137 S. Ct.

973, 197 L. Ed. 2d 398 (2017), the Supreme Court rejected the bankruptcy court's plan that endorsed priority skipping in the absence of clear congressional intent. Underscoring the fact that "[t]he [Bankruptcy] Code's priority system constitutes a basic underpinning of business bankruptcy law[,]" *id.* at 983, the Court explained that "[t]he importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure." *Id.* at 984 (citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468, 121 S. Ct. 903, 149 L. Ed. 2d 1 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes") (alteration in original)). By elevating Chapter 7 administrative expenses above the UST's quarterly fees, the bankruptcy court has essentially interpreted Congress' silence as signaling a departure from the priorities specifically established in § 507(a). In the absence of any clear indication that Congress intended to disturb the priority status it specifically afforded the UST's quarterly fees, the Court is unwilling to do so.[5] *See In re Endy*, 104 F.3d at 1157-58.

The Court concludes that the bankruptcy court erred when it determined that 11 U.S.C. § 726(b) created a superpriority elevating Chapter 7 administrative expenses to a status above the UST's quarterly fees incurred prior to conversion. Rather, the Court adopts the "majority

---

[5] While the Court agrees with the bankruptcy court that priority status cannot be found in policy arguments, and it is unnecessary to rely on legislative history to resolve the present dispute, the legislative history of the United States Trustee Program also supports the Court's conclusion that the priority statutes cannot be interpreted as divesting the UST of its priority status. Most courts to have considered the issue have concluded that "28 U.S.C. § 1930(a)(6) fees are in actuality a revenue generating mechanism to fund the U.S. Trustee program." *In re N. Hess's Sons*, 218 B.R. at 360 (citing legislative history, including H.R. REP. NO. 104-676); *see Vergos*, 159 F.3d at 992 ("Although the legislative history pertaining to the 1996 amendment is not extensive, that history does indicate that Congress was intent on raising additional revenue."); *In re Cash Cow Servs. of Fla. L.L.C.*, 249 B.R. 33, 36 (Bankr. N.D. Fla. 2000) ("The United States Trustee System Fund was created by Congress to insure that the United States Trustee Program would be self-funded by the users of the bankruptcy system—at no cost to the taxpayer.") (quotation marks and citations omitted).[5] As a revenue generating measure, it should be interpreted in a way that maximizes revenues. *See In re Hess' Sons*, 218 B.R. at 360 (interpreting ambiguity in § 1930(a)(6) regarding disbursements in favor of the United States Trustee as the "taxing authority") (citing *Bob Jones Univ. v. United States*, 461 U.S. 574, 595, 103 S. Ct. 2017, 76 L. Ed. 2d 157 (1983)).

12

approach, under which the U.S. Trustee's fees and the Chapter 7 expenses are first satisfied ratably, followed by the Chapter 11 expenses, [as] more consistent with the statutory scheme and its underlying purposes." *In re Endy*, 104 F.3d at 1158; *see In re Mary James*, 225 B.R. at 640 (citation omitted).

V. **CONCLUSION AND ORDER**

For all of the foregoing reasons, the September 30, 2016 order of the bankruptcy court is REVERSED. It is further ordered that this matter is REMANDED to the bankruptcy court for proceedings consistent with this memorandum opinion and order.

**IT IS SO ORDERED**.

Dated: September 22, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**